**Joseph P. CONNORS Sr., et al.,**

v.

**DUNKARD CREEK COAL, INC., Appellant.**

**Nos. 91–7062, 91–7143.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 18, 1992.

Decided Feb. 2, 1993.

Marcia Voorhis Andrew, Cincinnati, OH, with whom Kathryn A. Ledig, Washington, DC, was on the brief, for appellant.

Stephen J. Pollak, with whom Wendy S. White, David W. Allen, Margaret M. Topps and Kenneth M. Johnson, Washington, DC, was on the brief, for appellee.

Before: MIKVA, Chief Judge, SILBERMAN and SENTELLE, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

■ The Trustees of the United Mine Workers of America Health and Retirement Funds ("Trustees") brought this suit against Dunkard Creek Coal, Inc. ("Dunkard") seeking contributions due the Funds under the 1981 collective bargaining agreement. Under this agreement, contributions were required for coal "procured or acquired ... for use or for sale" when produced by non-signatory operators. Dunkard used two non-signatory operators to produce coal from lands that it controlled, but did not make contributions for that coal when it was sold to third parties. Dunkard claimed that such contributions were not

required since Dunkard never acquired title to the coal. The Trustees insisted that under the plain meaning of the words "procure" and "acquire", subcontracting relationships such as the ones involved in this case were covered, and that title to the coal was not a relevant factor.

The District Court agreed with the Trustees and entered summary judgment in their favor. The District Court also awarded the Trustees $49,876.44 in interest, $19,436.34 in attorneys' fees and costs, plus additional "double" interest in the amount of $15.20 per day from the date of judgment until payment. We affirm the summary judgment award as well as the award for basic interest and attorneys' fees and costs. Since counsel for the Trustees agreed to recede from the request for double interest from the date of the judgment, we reduce the post-judgment interest award to $7.60 per day from July 9, 1991 until the date of payment.

Dunkard urges this court to construe the 1981 Agreement to require title to the coal to be a prerequisite to the obligation to make contributions to the Funds. This is the gist of the argument which it unsuccessfully advanced to the District Court, and we are equally unpersuaded.

Dunkard, as a signatory to the 1981 Agreement, recognized its obligations to pay for the coal it produced itself. However, as to the portion of the coal which was mined by its subcontractors, Dunkard insisted that the "procured or acquired" language of the Agreement required payment only when the obligee was in the chain of title to the coal. Dunkard argued that since the subcontractors were not signatories to the Agreement, and since Dunkard was never in the chain of title to the coal, no payments were due.

In addition, Dunkard made much of the fact that the "procured or acquired" language appeared in a clause of the Agreement which was commonly referred to as the "purchased-coal" clause. Whatever inferences can be drawn from such a reference can hardly trump the plain meaning of the words or the consistent interpretation of this clause. Indeed, if Dunkard is correct, the language leaves a truck-size loophole in an agreement which was intended to protect the work standards of union miners by equalizing labor costs between union and non-union labor (at least as far as pension and welfare contributions are concerned). Every signatory mine-owner would find it advantageous to subcontract out the actual augering of the coal to non-union operators. Collective bargaining agreements are not usually so gossamer in their effects, nor was the 1981 Agreement. The short-hand use of the "purchased-coal" term undoubtedly refers to the more frequent way in which signatories deal in coal that has been augered by non-union labor; but such short-hand cannot subsume the actual language used in the Agreement to preclude the application of the contractual language to the less frequent subcontracting transaction involved in this case.

Nothing said by our sister Third Circuit conflicts with our decision. *In Re: Bituminous Coal Wage Agreements*, 756 F.2d 284, 287 (1985), merely acknowledges that the clause in question requires an employer-signatory to pay into the Funds whether the coal was extracted by the employer or "was *bought* from an operator that had not ... paid the contribution...." (emphasis added by Dunkard). Clearly, the purchase of coal is one type of transaction covered by the clause; but that is not the only transaction which the language reaches, and the Third Circuit suggests nothing to the contrary.

■ Dunkard seeks to raise an objection to the interest award on the ground that it really is a liquidated damages award and as such is limited to 20 percent under the pertinent section of the ERISA statute. See 29 U.S.C. § 1132(g)(2)(C)(ii). Dunkard waived its right to challenge the interest and fees awards, since it did not object to these calculations in the District Court. Instead, it objected to the amount of the attorneys' fees as excessive, and to the starting date for interest accrual. We have often and clearly stated that we will

not consider new legal theories raised for the first time on appeal from a district court. *Felch v. Air Florida, Inc.*, 866 F.2d 1521, 1525 (D.C.Cir.1989).

Since the Trustees receded from their claim for double interest for the post-judgment period, and agree that only single interest is due for that period, we modify the District Court judgment accordingly.

*It is so ordered.*